# McQuiddy *v.* King, *et al.*

*Bill to Satisfy Judgment Out of Unpaid Subscription.*

(Decided January 14, 1915.  67 South. 1015.)

*Banks and Banking; National; Enforcement of Unpaid Subscription; State Statute.*—The provisions of section 3744, Code 1907, are not available to a judgment creditor of a national bank to enforce payment by a stockholder of his unpaid subscription, as its enforcement would impair the remedy giving the bank the right to sell the stock of a delinquent subscriber, for the satisfaction of the amount due thereon.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by J. C. McQuiddy, doing business under the firm name and style of McQuiddy Printing Company, against S. P. King and others, to require them to satisfy the judgment against the National City Bank of Birmingham out of unpaid subscriptions to the stock of said bank. Decree for respondents and complainants appeal. Affirmed.

The bill alleges the recovery of the judgment against the National City Bank of Birmingham, execution thereon, and returned no property found, the filing of a certificate of the organization of the National City Bank of Birmingham with the Comptroller of the Currency of the United States treasury department, which is alleged to have created said bank a body coporate in September, 1908, that each of the respondents subscribed for a number of shares of the capital stock of the National City Bank of Birmingham, and that the several subscriptions of respondent to said capital stock of said corporation remain wholly unpaid, and are subject to the payment of complainant's said judgment.

ROBERT C. REDUS, for appellant.

NATHAN L. MILLER, NEEDHAM A. GRAHAM, JR., H. CLANTON MILLER, JOHN S. KENNEDY, FORNEY JOHNSTON, and HALEY & HALEY, for appellees.

McCLELLAN, J.—Laying aside other less important questions presented, the controlling inquiry is whether the provisions of section 3744 of the Code (1907) of Alabama is available to a judgment creditor of a national bank to enforce the payment by a stockholder therein of his unpaid subscription to the capital stock of such a bank. In *Davis v. Elmira Bank*, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700, it was said: "National banks are instrumentalities of the federal government, created for a public purpose; and as such necessarily subject to the paramount authority of the United States. It follows that an attempt, by a state, to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of

the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties, for the performance of which they were created."

In *Easton v. Iowa,* 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452, it was said: "Our conclusions, upon principle and authority, are that Congress, having power to create a system of national banks, is the judge as to the extent of the powers which should be conferred upon such banks, and has the sole power to regulate and control the exercise of their operations; that Congress has directly dealt with the subject of insolvency of such banks by giving control to the Secretary of the Treasury and the Comptroller of the Currency, who are authorized to suspend the operations of the banks and appoint receivers thereof when they become insolvent, or when they fail to make good any impairment of capital; that full and adequate provisions have been made for the protection of creditors of such institutions by requiring frequent reports to be made of their condition, and by the power of visitation by federal officers; that it is not competent for state Legislatures to interfere, whether with hostile or friendly intentions, with national banks or their officers in the exercise of the powers bestowed upon them by the general government."

Section 5141 of the Revised Statutes of the United States provides: "Section 5141. Whenever any shareholder, or his assignee, fails to pay any installment on the stock when the same is required by the preceding section to be paid, the directors of such association may sell the stock of such delinquent shareholder at public auction, having given three weeks' previous notice thereof in a newspaper published and of general circu-

lation in the city or county where the association is located, or if no newspaper is published in said city or county, then in a newspaper published nearest thereto, to any person who will pay the highest price therefor, to be not less than the amount then due thereon, with the expenses of advertisement and sale; and the excess, if any, shall be paid to the delinquent shareholder. If no bidder can be found who will pay for such stock the amount due thereon to the association, and the cost of advertisement and sale, the amount previously paid shall be forfeited to the association, and such stock shall be sold as the directors may order, within six months from the time of such forfeiture, and if not sold it shall be canceled and deducted from the capital stock of the association. If any such cancellation and reduction shall reduce the capital of the association below the minimum of capital required by law, the capital stock shall, within thirty days from the date of such cancellation, be increased to the required amount; in default of which a receiver may be appointed, according to the provisions of section fifty-two hundred and thirty-four, to close up the business of the association."

There is no federal statute providing the remedy created by our section 3744; nor are we advised of any federal statute affording any other remedy against a delinquent stockholder than that defined in section 5141, ante.

The question is, whether the visiting of the provisions of our statute (section 3744) upon the federal creature and its stockholders would interfere with or embarrass the operation and effect of the statutory expression of the federal authority. The learned trial judge thus concisely and conclusively sets down in his opinion the

[McQuiddy v. King, et al.]

considerations which must lead to the pronouncement of affirmance here: "The bank itself is given the right to sell the stock of a delinquent shareholder for the satisfaction of the amount due thereon (U. S. Rev. St., § 5141) and this remedy is apparently for the purpose of enabling the banking association to maintain its capital in accordance with its charter obligations, and for the benefit of all creditors and all its members. This purpose could be defeated and the capital diminished if a creditor were allowed to intercept unpaid subscriptions by subjecting the amounts due thereon to his individual debt against the bank in the manner attempted by the bill of complaint in this cause. For the maintenance of this bill there seems to be no authority, unless under section 3744 of the Code of Alabama, which prescribes a mode of procedure in favor of judgment creditors against delinquent shareholders, and wherewith this bill conforms. Though this statute purports in terms to apply to all corporations it is to be construed as inapplicable to national banks; otherwise it would appear as an invasion of the province of federal legislation, and to the extent of any inconsistency with that legislation it would be abortive. The bill is without equity, and the decree sustaining demurrers will stand."

The decree is affirmed.

Affirmed.

Anderson, C. J., and Sayre and de Graffenried, JJ., concur.